# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KRISTINE FLYNN, LENDA FLOURNOY,
VERNESSIA L. PARKER, and DEBBIE ANN RAMOS,

        Plaintiffs,

        -vs-                    Case No.   06-C-537

JIM DOYLE, MATTHEW J. FRANK,
JAMES GREER, DAVID BURNETT,
KEVIN KALLAS, DONALD HANDS,
BARBARA RIPANI, ANA BOATWRIGHT,
HOLLY MEIER, and STEVEN MERESS,

        Defendants.

---

## DECISION AND ORDER

---

Plaintiffs Kristine Flynn, Lenda Flournoy, Vernessia L. Parker, and Debbie Ann Ramos, on behalf of themselves and all others similarly situated, filed this *pro se* civil right action pursuant to 42 U.S.C. § 1983. The plaintiffs, who are incarcerated at Taycheedah Correctional Institution (TCI) in Fond du Lac, Wisconsin, claim that the defendants have violated their rights under the Eighth and Fourteenth Amendments to the United States Constitution; Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. This Decision and Order addresses, *inter alia*, the plaintiffs' motion for class certification and the defendants' motion for summary judgment.

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The plaintiffs move for the certification of two classes, defined as follows: 1) The TCI Class, defined as "all prisoners who are now or in the future will be confined at TCI;" and 2) The ADA Subclass, defined as "all individuals with disabilities who are now or in the future will be confined at TCI." The defendants oppose the plaintiffs' motion.

TCI is the largest women's prison in Wisconsin and currently houses over 700 prisoners. The four named plaintiffs seek to represent the proposed TCI Class. The TCI Class plaintiffs set forth the following claims: 1) deliberate indifference to the plaintiffs' serious medical, mental health, and dental needs causing avoidable pain, mental suffering, and deterioration of the plaintiffs' health and, in some cases, resulting in premature death, in violation of the Eighth Amendment; and 2) disparity in mental health treatment for male and female prisoners in Wisconsin Department of Corrections (DOC) custody constituting a denial of equal protection of the laws, in violation of the Fourteenth Amendment.

Plaintiffs Flynn, Flournoy, and Parker seek to represent the ADA Subclass. The ADA Subclass plaintiffs claim that the defendants deprive them of their rights under the ADA and the Rehabilitation Act by, 1) failing to administer services, programs, and activities in the most integrated setting appropriate to needs of the subclass plaintiffs; 2) failing to make reasonable modifications in the defendants' policies, practices, and procedures to avoid discriminating against the subclass plaintiffs on the basis of disability; 3) using eligibility criteria or methods of administration that have the effect of discriminating against the

2

subclass plaintiffs on the basis of disability; and 4) failing to furnish appropriate aids, services, devices, or assistance to afford the subclass plaintiffs an equal opportunity to participate in and benefit from the defendants' services, programs, and activities. The plaintiffs seeks declaratory and injunctive relief on their own behalf and on behalf of those similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2).

Under Federal Rule of Civil Procedure 23(a), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." In addition, to prosecute a class action, the plaintiffs must show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

The plaintiffs contend that with respect to both proposed classes, all of the requirements of Rules 23(a) and (b)(2) are met, and that the classes should be certified. Specifically, the plaintiffs assert that, 1) the classes are so numerous that joinder of all members is impracticable; 2) for both classes, there are questions of law and fact common to the class; 3) the claims of the representative plaintiffs are typical of the claims of the

3

classes; 4) the named plaintiffs will fairly and adequately protect the interests of the classes and; 5) the requirements of Rule 23(b)(2) are satisfied for both classes.

The defendants oppose the plaintiffs' motion for class certification. According to the defendants, class certification must fail because the proposed classes are not sufficiently defined so that the class is identifiable. The defendants also contend that the plaintiffs have failed to meet their burden of establishing the Rule 23(a) requirements. In that regard, the defendants assert that the proposed classes lack requisite commonality and typicality of the asserted facts and claims, and that the named plaintiffs will not adequately represent the proposed classes.

## 1. Definition of Proposed Classes

The defendants contend that class certification must fail because the proposed classes are not sufficiently defined so that the class is identifiable. According to the defendants, the proposed TCI Class (all prisoners who are now or in the future will be confined at TCI) is not properly defined because the class would encompass inmates that have no medical or mental health needs or have never had serious medical or mental health needs. Furthermore, the defendants contend that the proposed ADA Subclass (all individuals with disabilities who are now or in the future will be confined at TCI) is too broadly defined and not sufficiently identifiable. The defendants assert that it is too broadly defined because a class member with a disability could have received proper medical and/or mental health treatment. They maintain that the proposed ADA subclass is not sufficiently identifiable

4

because the Court would necessarily have to address the issue of whether each potential member is a "qualified individual with a disability" to determine class membership.

Whether a class is properly defined or identifiable is not one of the requirements listed in Rule 23(a). However, "[i]t is axiomatic that for a class action to be certified a 'class' must exist." *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981). The class must be sufficiently describable so that the Court can identify with some confidence who is, and who is not, a member of the class. *See, e.g., Tefel v. Reno*, 180 F.3d 1286, 1304 (11th Cir. 1999) (class that includes both aliens who had unsuccessfully applied for suspension of deportation and aliens who have never applied is "overly broad"); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 n.1 (5th Cir. 1999) (class of employees alleging illness caused be defective ventilation system is not deficient because allegation of defective system or injury from it has yet to be proven on merits). If the general outlines of the class are identifiable at the outset of the litigation, a class will be deemed to exist. 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1760 (3d ed. 2005); *see, e.g., Carter v. Johnson*, 174 F.R.D. 452, 459-61 (D. Neb. 1996) (proposed class of female patients bringing an action against officials and psychiatrists of a state-supported mental health institution alleging failure to protect plaintiffs from assaults by male patients, which class included, in addition to women who were actually assaulted, women who were currently patients or would be patients and had not been assaulted, was adequately defined and ascertainable for purposes of class certification; residential treatment at the

institution provided a definite boundary for determining class members, and those not assaulted alleged that they feared for their safety as a result of defendants' policies and practices).

In this case, the proposed class members for both classes are easily defined: 1) current and future TCI prisoners, and 2) current and future TCI prisoners who have a disability. Moreover, as noted by the plaintiffs, the defendants' own records will identify which inmates have a disability. (Pls.' Reply Br. at 5 n.2.) Finally, courts routinely certify class actions involving prisoners, including cases challenging prison health care, mental health care, and dental care. *See, e.g., Ramos v. Lamm*, 639 F.2d 559, 562, 577 (10th Cir. 1980) (certifying class of "all persons who are now or in the future may be incarcerated in the maximum security unit" to challenge constitutionally inadequate mental health care); *Penland v. Warren Co. Jail*, 797 F.2d 332, 333-35 (6th Cir. 1986) (certifying (b)(2) class of "present and future prisoners" to challenge conditions of confinement, including health care); *Bradley v. Harrelson*, 151 F.R.D. 422, 425-27 (M.D. Ala. 1993) (certifying (b)(2) class of seriously mentally ill prisoners to challenge adequacy of mental health services); *Robert E. v. Lane*, 530 F. Supp. 930, 941-44 (N.D. Ill. 1981) (certifying (b)(2) class of "all persons who are or will be incarcerated at Stateville and who need or will need mental health services"); *Dean v. Coughlin*, 107 F.R.D. 331, 332-35 (S.D.N.Y. 1985) (certifying (b)(2) class of "all persons who are or will be inmates" to challenge inadequate dental care); *Jones 'El v. Berge*, 2001 WL 34379611, at *12-13 W.D. Wis. 2001) (certifying 23(b)(2) class of prisoners

6

subject to "systemic" unconstitutional conditions of confinement, including inadequate medical, mental health, and dental care); *see also Hassine v. Jeffes*, 846 F.2d 169, 175-80 (3d Cir. 1988) (certifying 23(b)(2) class of prisoners challenging conditions of confinement).

Based on the foregoing, the Court finds that the proposed classes are sufficiently defined.

## 2. Commonality and Typicality

The Court's analysis of the commonality and typicality requirements are closely related. To satisfy the commonality requirement, a plaintiff need only show that there is a "common nucleus of operative fact." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Similarly, to satisfy the typicality requirement, a plaintiff must show that his claim arose "from the same event or practice or course of conduct that gives rise to the claims of other class members and his . . . claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

In the instant action, the defendants argue that the plaintiffs' claims about inadequate medical care are different from those of the entire class, and thus, do not satisfy the commonality and typicality requirements. For instance, the complaint alleges that TCI inmates suffer from inadequate medical follow up and are not promptly referred for outside medical consultation. The individual plaintiffs, however, do not claim that they suffered from these alleged deficiencies. Thus, the defendants argue, the various class members' claims of an Eighth Amendment violation stem from different factual circumstances.

7

The Court would be persuaded by the defendants' argument if the plaintiffs were alleging deliberate medical indifference at the individual level, or if they were seeking monetary damages. However, deliberate indifference to serious medical needs of prisoners "may occur on an individual level, such as when a doctor intentionally mistreats an inmate . . . or on an institutional level, when the prison's system of medical care is so seriously inadequate as to cause unwarranted suffering." *Cruz v. Ward*, 558 F.2d 658, 662 (2d Cir. 1977), *cert. denied*, 434 U.S. 1018 (1978). Where a prisoner class seeks to challenge an entire health care system, the class must show that repeated acts of misconduct created a pattern of deliberate indifference to the inmates' serious medical needs. *See Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999) ("showing of deliberate indifference through pattern of alleged neglect entails a heavy burden."). Accordingly, when alleging a pattern of misconduct, the claims of each class member need not be identical to raise common factual and legal questions about the adequacy of the entire system. *See Dean v. Coughlin*, 107 F.R.D. 331, 333 (S.D.N.Y. 1985).

The commonality and typicality requirements are also more easily met when the class members only seek injunctive relief, rather than monetary damages. In class actions where the relief sought is chiefly monetary, resolution of the class claims will depend "on the intangible, subjective differences of each class member's circumstances," and "entail complex individualized determinations." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998). Those varying determinations would potentially undermine the

8

requirement that each class member's claim be typical and common to each other. However, when, as is the case here, the plaintiffs only seek injunctive relief, the possibility of individualized determinations is removed. *See Robert E. v. Lane*, 530 F. Supp. 930, 943 n.17 (N.D. Ill. 1981) ("differences might be relevant in computing the actual amount of compensable damage suffered by each class member. Plaintiffs, however, seek class certification only on their declaratory and injunctive demands.")

In the circumstances of this case, where the class is alleging a pattern of deliberate indifference to inmates' serious medical needs, and the class only seeks injunctive relief, the commonality and typicality requirements are satisfied.

### 3. Adequate Representation of Proposed Class

Although they do not dispute the ability of plaintiffs' counsel to adequately represent the proposed classes in this case, the defendants do contend that the named plaintiffs would not be adequate representatives of the class for two reasons. First, the defendants argue that the named plaintiffs' failure to advance certain claims found in the complaint demonstrates that they lack the same interest as other class members in establishing the claims alleged against the defendants. Second, the defendants maintain that the named plaintiffs have failed to ensure zealous advocacy on behalf of the classes and cannot proceed as class representatives because the named plaintiffs have failed to exhaust available administrative remedies on several of the outlined claims.

9

The prerequisite of adequate class representation consists of the following factors: 1) whether the plaintiffs' attorney is qualified, experienced, and generally able to conduct the proposed litigation; 2) whether the class representatives have interests that are antagonistic to the class; and 3) whether the class representatives have a sufficient interest in the case to assure vigorous advocacy. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993).

In this case, there is no indication that the class representatives have interests that are antagonistic to the classes. Rather, with regard to both classes, all class members are TCI inmates challenging a pattern of institutional conduct. Moreover, as explained *supra.*, factual variances as to how the conduct affected the class members do not defeat the plaintiffs' motion. Finally, as explained *infra.*, the Court finds that the plaintiffs have exhausted administrative remedies and therefore, the defendants' arguments with respect to exhaustion are without merit.

Based on the foregoing, the plaintiffs' motion for class certification will be granted.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On August 14, 2006, the defendants filed a motion for summary judgment. The defendants contend, 1) the complaint must be dismissed without prejudice because the plaintiffs have failed to exhaust all administrative remedies available in the Inmate Complaint Review System; 2) those claims where the plaintiffs failed to exhaust

10

administrative remedies must be dismissed; 3) those claims where the plaintiffs have failed to state a claim upon which relief can be granted must be dismissed; and 4) the Court should stay discovery while the summary judgment motion is pending.

In response, the plaintiffs contend that, 1) the plaintiffs have properly exhausted all substantive claims raised in this action; 2) the defendants have failed to satisfy their burden to prove non-exhaustion; 3) if the Court finds there are unexhausted claims, only those claims should be dismissed, or plaintiffs should be given leave to amend their complaint; and 4) they have properly stated a claim upon which relief can be granted as to all substantive claims raised in this action.[1]

### Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the

---

[1]On December 8, 2006, the plaintiffs filed a motion for leave to file supplemental evidentiary materials opposing the defendants' motion for summary judgment. Specifically, they seek to file proposed supplemental proposed findings and related supplemental evidence based on grievance materials in the defendants' possession that were only recently obtained by plaintiffs' counsel. When the plaintiffs filed their response to the defendants' motion for summary judgment, along with it they filed a motion for continuance pursuant to Federal Rule of Civil Procedure 56(f). The plaintiffs sought the continuance to allow them to conduct discovery necessary to oppose the defendants' motion for summary judgment, in the event that the motion was not denied outright. The Court will consider the plaintiffs' supplemental evidentiary materials and, therefore, that motion will be granted. Hence, the plaintiff's motion for a continuance will be denied as moot. Finally, the plaintiffs' unopposed motion for leave to exceed the page limit of Civil L.R.7.1(f) will be granted.

applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a summary judgment motion is made and supported as provided in [Rule 56(c)], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In evaluating a motion for summary judgment, the Court must draw all inferences in a light most favorable to the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). "However, we are not required to draw every conceivable

12

inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted).

### **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 126 S.Ct. 2378, 2384, 2387 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"). Exhaustion is an affirmative defense, and the burden of proof is on the defendants.

13

*Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code specifically provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

In order to use the ICRS, an inmate must file a complaint with the inmate complaint examiner within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). Complaints submitted later than fourteen days after the event may be accepted for good cause. Wis. Admin. Code § DOC 310.09(6). After reviewing and acknowledging each complaint in writing, the inmate complaint examiner either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that

14

decision by filing a written request for review with the corrections complaint examiner. Wis. Admin. Code § DOC 310.13(1). The corrections complaint examiner reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the correction complaint examiner's recommendation, or return the appeal to the corrections complaint examiner for further investigation. Wis. Admin. Code § DOC 310.14(2).

In class action prisoner litigation certified under Rule 23(b)(2), the PLRA's exhaustion requirement is satisfied through "vicarious exhaustion" when "one or more class members ha[s] exhausted [her] administrative remedies with respect to each claim raised by the class." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (quoting *Jones 'El v. Berge*, 172 F. Supp. 2d 1128, 1133 (W.D. Wis. 2001)); *see also Gates v. Cook*, 376 F.3d 323, 329-30 (5th Cir. 2004); *Jackson v. District of Columbia*, 254 F.3d 262, 268-69 (D.C. Cir. 2001); *Lewis v. Washington*, 265 F. Supp. 2d 939, 941-43 (N.D. Ill. 2003). Support for this rule is found in employment discrimination class action cases as well as the purpose of the PLRA itself:

> The purpose behind enactment of the PLRA exhaustion requirement was "to reduce the quantity and improve the quality of prisoner suits. *Porter*, 534 U.S. at 524, 122 S.Ct. 983. To this end, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. *Id.* at 524-25; 122 S.Ct. 983. The *Porter* Court noted that in some cases, prison officials may take corrective action to address an inmate's concerns, thus obviating the need for litigation. *Id.* at 525, 122 S.Ct. 983. This rationale for the PLRA exhaustion requirement is similar to the purpose

behind the Title VII exhaustion requirement, which is to allow the EEOC "an opportunity to settle disputes . . . before the aggrieved party [is] permitted to file a lawsuit." *Zuckerstein v. Argonne Nat'l Lab.*, 663 F. Supp. 569, 572 (N.D. Ill. 1987) (Moran, J.) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). In the Title VII context, this purpose behind administrative exhaustion is satisfied in class action suits where there is one complying plaintiff because

> [i]t would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC. If it is impossible to reach a settlement with one discriminatee, what reason could there be to assume that the next one would be successful.

*Id.* (quoting *Oatis v. Crown Zellerbach Corp*, 398 F.2d 496, 498 (5th Cir. 1968)). Similarly, in the PLRA context, the purpose of affording prison officials an opportunity to address complaints internally is met when one plaintiff in a class action has exhausted his administrative remedies. To require each inmate with the same grievance to exhaust their administrative remedies would be wasteful, and "[a]s long as prison officials have received a single complaint addressing each claim in a class action, they have the opportunity to resolve disputes internally and to limit judicial intervention in the management of prisons." *Jones*, 172 F. Supp. 2d at 1133. The analogy to the Title VII exhaustion requirement is apt. The purpose behind the PLRA requirement is met when a single plaintiff in a class action has exhausted his administrative remedies, and a rule of vicarious exhaustion in PLRA cases is therefore appropriate.

*Lewis*, 265 F. Supp. at 942-43.

The parties dispute many facts. In part, the disputes are based on disagreement over what the claims are in this case. According to the defendants, the "claims" in this case

16

consist of each instance in which the defendants' conduct affected the plaintiffs. For example, the defendants contend that the plaintiffs have failed to exhaust the following "claims":

> (1) alleged failure of the defendants to take reasonable and effective steps to establish an appropriate health care system at TCI following NCCHC and LAB reports (DFOF, ¶¶ 19-20); (2) alleged high rate of chronic disease at TCI (DFOF, ¶¶ 21-22); (3) alleged dysfunctional organization of Health Services at TCI (DFOF, ¶¶ 23-24); (4) alleged need for infirmary or long-term care at TCI (DFOF, ¶¶ 35-36); (5) alleged inadequate prenatal, obstetric and post-partum care, alleged shackling during childbirth, and alleged inadequate dental care (DFOF, ¶¶ 37-40); (6) alleged increased demands on the health care staff due to the change in the admissions process (DFOF, ¶¶ 41-42); (7) alleged high rate of mental illness and the lack of resources allocated to address this alleged problem (DFOF, ¶¶ 43-44); (8) alleged inadequate or poorly trained mental health care staff (DFOF, ¶¶ 45-46); (9) alleged over-prescription of psychotropic medications and TCI's case management of psychotropic medications (DFOF, ¶¶ 47-48); (10) alleged failures of Monarch Unit (DFOF, ¶¶ 49-50); (11) alleged lack of TCI's inpatient capacity to treat mental illness (DFOF, ¶¶ 51-52); (12) alleged gender-based disparities in the provision of mental health care (DFOF, ¶¶ 53-54); (13) alleged gender-based disparities in the provision of mental health care at the juvenile level (DFOF, ¶¶ 55-56); and (14) alleged discrimination on the basis of alleged disabilities of plaintiffs Flynn, Flournoy and Parker (DFOF, ¶¶ 57-58).

(Defs.' Br. in Supp. of Mot. for Summ. J. at 5-6.)

According to the plaintiffs, the "claims" listed above are not claims at all but rather are examples of conduct that make up the claims in this case.

Defendants argue that plaintiffs have failed to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a).

17

But defendants' entire exhaustion argument rests on their pervasive confusion of plaintiffs' substantive claims for relief with myriad facts and evidence alleged in support, or as examples, of those claims. For example, defendants argue that no plaintiff has specifically exhausted the "claim" that defendants failed to take corrective action after the Legislative Audit Bureau (LAB) and the National Commission on Correctional Health Care (NCCHC) reports were issued documenting extremely poor health care at TCI (*see* Defs.' Br. at 5), and that named plaintiff Kristine Flynn has not specifically exhausted the "claim" that she was improperly taken off psychotropic medications in June 2002 (*see* Defs.' Br. at 13). But in a case such as this one, which seeks only prospective injunctive relief and no monetary damages, neither of those past occurrences are claims for relief that need to be exhausted – they are *examples* and *evidence* of defendants' ongoing deliberate indifference to plaintiffs' serious medical needs.

(Pls.' Br. in Resp. to Defs.' Mot. for Summ. J. at 2.)

The June 15, 2006, Screening Order in this case allowed the plaintiffs to proceed on claims under the Eighth Amendment, Fourteenth Amendment, the ADA, and the Rehabilitation Act, as set out in the complaint. (The Screening Order also directed to the defendants to respond to the plaintiffs' motion for class certification.) According to the complaint, the "claims," as identified by the defendants, are actually "Facts Giving Rise to the Claims for Relief." (*See* Compl. at 13-40.) The discussion concerning the plaintiffs' motion for class certification, *supra.*, also makes this clear. With this in mind, the Court will now turn to the merits of the defendants' motion for summary judgment.

18

## Claims

The TCI Class plaintiffs are proceeding on the following claims: 1) deliberate indifference to the plaintiff's serious medical, mental health, and dental needs in violation of the Eighth Amendment; and 2) disparity in mental health treatment for male and female prisoners in DOC custody constituting a denial of equal protection of the laws, in violation of the Fourteenth Amendment. The ADA Subclass plaintiffs claim that the defendants deprive them of their rights under the ADA and the Rehabilitation Act by, 1) failing to administer services, programs, and activities in the most integrated setting appropriate to needs of the subclass plaintiffs; 2) failing to make reasonable modifications in the defendants' policies, practices, and procedures to avoid discriminating against the subclass plaintiffs on the basis of disability; 3) using eligibility criteria or methods of administration that have the effect of discriminating against the subclass plaintiffs on the basis of disability; and 4) failing to furnish appropriate aids, services, devices, or assistance to afford subclass plaintiff an equal opportunity to participate in and benefit from the defendants' services, programs, and activities.

## Facts

It is undisputed that the named plaintiffs have properly filed and appealed at least thirty-five inmate complaints related to health care issues. (PFOF ¶ 2.) ICRS tracking reports indicate that in a five and one-half year period from 1999 to mid-2004, out of 1889

19

inmate complaints filed related to medical care at TCI, 394 were affirmed or affirmed with modification. (PFOF ¶ 5.)

It is undisputed that plaintiff Flynn has exhausted administrative remedies with respect to the following issues: 1) that she did not receive all of her medications due to improper medication delivery by corrections officers; 2) that she did not receive adequate mental health care counseling; and 3) that she has not received prescribed pain medications. (DFOF ¶ 9; PFOF ¶ 14.) In addition, Flynn has exhausted on the following inmate complaints, as summarized by the ICRS system: "Needs medication for digestion that doctor stopped" (10/26/04); "Wants a high fiber diet" (10/26/04); "Inhaler and peak meter are not being kept in her room in segregation" (12/01/04); "Needs to see a specialist for female medical problems" (3/18/05); "Has not received a refill for her stool softener" (3/21/05); "Has not received copy of test result from HSU" (3/21/05); "Wants to be tested for Parkinson's disease" (3/21/05); "Has not received new order of Synthroid medication that was changed" (3/25/05); "Asking for a medication change and has not heard back from HSU" (3/25/05); "Multiple psychiatric concerns" (3/28/05); "needs to be re-evaluated by HSU" (4/1/05); "medical concerns" (4/1/05); "welbutrin has not been refilled" (4/7/05); "out of ibuprofin [sic]" (4/7/05); "needs appointment with GI specialist" (4/28/05); "has not been seen to be evaluated for egg crate mattress" (7/8/05); "wants results of x-rays" (7/8/05); and "out of medication" (7/19/05). (PFOF ¶ 15.) Plaintiff Flynn has also exhausted her administrative remedies with respect to the shortage of health care staff. (PFOF ¶ 16.)

20

It is undisputed that plaintiff Flournoy has exhausted administrative remedies with respect to the following three issues: 1) that she suffers from frequent sciatic pain and difficulty walking, but that this disability has never been properly treated; 2) that following foot surgery, her foot surgeon instructed TCI to keep her foot tightly wrapped, and to check regularly for proper alignment, but that she did not receive this prescribed post-surgical care; and 3) that she has been forced to wait several months for referrals to see outside physicians. (DFOF ¶ 12; PFOF ¶ 26.) In addition, Flournoy has exhausted on the following inmate complaints, as summarized by the ICRS system: "responce [sic] from security and hsu for her medical concerns" (5/27/03); "Complains about Doctor" (7/16/03); "Wants to see medical specialists for menopause, headache, nose problems, legs and feet problems, allergies, back and neck problems and skin problems. Rang her emergency bell on third shift with her request to see a Nurse for he [sic] medical problems" (1/20/04); "Needs to see Doctor for multiple medical issues (groin pain, joint disease, sciatic pain, infected toe, and a swollen heel" (7/20/04); "Medical treatment after staff called the Nurse about her leg" (1/14/05); "Was given another inmate's medication" (3/25/05); "Wants to see a Dermatologist" (4/25/05); "Was denied Resource" (4/25/05); "dr. changed medication order" (5/12/05); "dr has not referred her to see an offsight [sic] dr." (5/12/05); "Complains of medical care at appointment with Nurse on 8/26/05" (9/1/05). (PFOF ¶ 27.) Plaintiff Flournoy has also exhausted with respect to improper medication delivery by corrections

21

officers; the deficient sick-call process and medical follow-up system; improper or excessive medical co-payment fees; and inadequate women's health care. (PFOF ¶ 28.)

It is undisputed that plaintiff Parker has exhausted administrative remedies on the following offender complaint, as summarized by the ICRS: "Inmate complains she was denied medical attention and that she has a fractured rib" (4/10/96). (PFOF ¶ 33.) In addition, Parker's ICRS complaint, summarized as "Weekly weight and blood pressure checks are not being done in seg," was affirmed by the inmate complaint examiner, obviating Parker's need to appeal. (PFOF ¶ 34.)

It is undisputed that plaintiff Ramos has exhausted administrative remedies with respect to the issue that she had improperly been charged co-payment fees. (DFPF ¶ 18.) Also, Ramos exhausted on the following inmate complaints, as summarized by the ICRS system: "medical co-pay" (1/10/03); and "Feels that it is not safe to wash her clothing in the same washers as people who have been diagnosed with staph infection due to TCI not having hot water in the housing units for washing clothes" (11/18/04). (PFOF ¶ 38.)

In addition to the undisputed facts set forth above, taken from the defendants' and the plaintiffs' proposed facts, the plaintiffs filed supplemental proposed findings of facts that identify exhausted inmate complaints not previously submitted. Affirmed grievances by plaintiff Flynn exhaust her administrative remedies on the following inmate complaints, as summarized by the ICRS system: "Was not prepped for surgery" (2/22/01); "Out of Trazadone and other carriable meds" (12/5/01); "out of medication" (10/17/02); "medication

22

is out" (12/3/02); "out of medications" (2/3/03); "Out of medication" (3/9/04); "Did not

receive meds." (6/28/04); "out of ibuprofin" (4/7/05); "welbutrin has not been refilled"

(4/7/05); "out of medication" (7/19/05); "needs medical follow-up" (8/24/05); "Needs to be

seen by HSU for catheterization" (4/20/06); "Delay in catherization" (4/24/06). (PSFOF ¶

3.) Affirmed grievances filed by plaintiff Flournoy exhaust her administrative remedies on

the following inmate complaints, as summarized by the ICRS system: "Was not given correct

dose of meds" (4/7/04); "Not being given her foot cream and hydrocortisone cream"

(4/27/04); "Medication concerns" (2/2/05); "needs medical attention for her foot" (8/22/05);

"Pain medication missing – oxycodone with aceteminophen" (2/24/06). (PSFOF ¶ 5.)

Affirmed grievances filed by plaintiff Parker exhaust her administrative remedies on the

following inmate complaints, as summarized by the ICRS system: "Medical issues after

carpal tunnel surgery" (6/8/04); "Did not receive pain medication, ice or pillow after surgery"

(7/19/04); "Weekly weight and blood pressure checks are not being done in seg" (1/27/05).

(PSFOF ¶ 6.)

   In addition, the plaintiffs' supplemental evidentiary materials identify inmate

complaints that were not coded as "Medical" by the ICRS system and therefore were not

previously included, but that do in fact relate to medical or mental health care. Plaintiff

Flynn has fully exhausted two inmate complaints related to her prolonged confinement in

punitive segregation in lieu of appropriate and intensive psychiatric care. These grievances

– coded as "Rules" and "Other," respectively – were summarized as follows by the ICRS

23

system: "is being treated as punitive when she should not be" (7/14/04); "Questions why she is still in administrative confinement" (8/17/04). (PSFOF ¶ 10.) Plaintiff Flynn also fully exhausted two inmate complaints on medical and mental health issues that were coded as "Staff." These grievances exhaust her administrative remedies on the following issues, as summarized by the ICRS system: "Took 33 minutes for meds to be handed out" (9/21/04); and "has not heard back from PSU staff about therapy" (4/4/05). (PSFOF ¶ 12.)

Plaintiff Parker fully exhausted an inmate complaint related to the destruction or discarding of her correspondence to psychological services and Monarch Unit staff. The grievance, coded as "Other," raises the issue of the competency and responsiveness of mental health care staff at TCI. Parker's original grievance states:

> I have resided in Monarch 22 months. I have written the Monarch Treatment team several letters concerning treatment needs, mental health issues, medical issues, and problems I was having on the unit with staff . . . This was all correspondence done within Taycheedah Corr. Inst. that should have been kept in my psychological and/or social services file for documentation of my contacting necessary staff about my issues. ... Many issues I wrote about were never addressed by them. For Monarch treatment team to discard letters I have written is against policy. ... There have been 3 Unit Managers in the 22 months I have resided in Monarch how did 1 Unit Manager know what was going on with me from the next Unit Manager. I believe the discarding of my letters was deliberate because the team didn't want the documentation of the issues in my file at all to keep others who view my file from seeing it. ...

(PSFOF ¶ 14.)

24

Parker also filed two grievances, both coded as "Classification," related to the denial of adequate inpatient mental health care and mental health programming opportunities at TCI. One raises the issue of why she was left in segregation on the Monarch Unit and was never transferred to a mental health institution like Winnebago, as mandated by the court in her civil commitment hearings. (PSFOF ¶ 16.) The other raises the issue of why she was never afforded the opportunity to attend a drug treatment group, as required by the parole board, despite having resided in the Monarch Unit for several years with a diagnosis of special needs. *Id.* Both of these grievances were deemed beyond the scope of the ICRS system and rejected pursuant to Wis. Admin. Code § 310.08(2)(b) because "decisions made by the program review committee are not appealable through the inmate complaint review system." *Id.*

## Analysis

A purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates litigation. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *see Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001). To provide officials with sufficient notice, inmates must file grievances at the place and time and with the information required by the prison's administrative rules. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Where the rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650; *see Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

25

Drawing on principles of notice pleading, the Court of Appeals for the Seventh Circuit has held that, absent more stringent administrative requirements, an inmate need not state "facts, legal theories, or demand relief," so long as the grievance objects "intelligibly to some asserted shortcoming." *Strong*, 297 F.3d at 650; *see Riccardo*, 375 F.3d at 524. With respect to the level of detail in an offender complaint, the DOC administrative rules require that inmate complaints "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code § DOC 310.09(1)(e). Thus, the standard is whether the inmate complaint would put an official on notice of the plaintiff's claim.

The undisputed facts reveal that the plaintiffs have filed, and fully exhausted, a multitude of inmate complaints regarding deficient medical and mental health care at TCI over the last several years. On this record, the defendants have not satisfied their burden of demonstrating that the plaintiffs failed to exhaust. To the contrary, ICRS records indicate that the plaintiffs have exhausted their administrative remedies for the purposes of this class action lawsuit. Accordingly, the defendants' motion for summary judgment for failure to exhaust administrative remedies will be denied.

### Defendants' Motion for Dismiss for Failure to State a Claim

In their motion for summary judgment, the defendants also contend that the Court should dismiss the plaintiffs' equal protection claim for failure to state a claim. They assert that the plaintiffs fail to state an equal protection claim because they do not allege that the defendants purposefully treat women differently just because they are women.

26

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Dismissal of an action under such a motion is warranted if the plaintiffs can prove no set of facts in support of its claims that would entitle them to relief. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiffs have pleaded insufficient facts, it is that even assuming all of their facts are accurate, they have no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). The facts alleged in the complaint are assumed to be true, and all facts, and all reasonable inferences flowing from those facts, are read in the light most favorable to the plaintiffs. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990).

To establish a *prima facie* case of discrimination under the equal protection clause, the plaintiffs are required to show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that they were treated differently from members of the unprotected class. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)). The complaint alleges that the defendants have knowingly and recklessly failed to provide female prisoners at TCI with access to mental health services comparable to the mental health services available to male prisoners through the Wisconsin Resource Center, in

27

violation of the plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment. (Compl. ¶ 1; *see also* Compl. ¶¶ 120-30, 150-56.)

There are no special pleading rules for prisoner civil rights cases. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-14 (2002)). The Federal Rules of Civil Procedure require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid. *Nance v. Vieregge*, 147 F.3d 589, 590-91 (7th Cir. 1998). All that needs to be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer. *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir. 2002).

The plaintiffs need not "show" or "establish" anything to survive a motion under Rule 12(b)(6); they need only allege. *Brown*, 398 F.3d at 916 (noting the "liberal requirement of notice pleading under Rule 8, particularly with regard to Equal Protection claims"). The plaintiffs have sufficiently alleged an equal protection claim.

Based on the foregoing, the defendants' motion for summary judgment will be denied.

### DEFENDANTS' MOTION TO STAY DISCOVERY

On August 14, 2006, the defendants filed a motion to stay discovery until such time as the Court has decided their motion for summary judgment. The defendants' motion will be denied as moot.

28

# ORDER

**IT IS THEREFORE ORDERED** that the plaintiffs' motion to certify class (Docket #2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is certified as a class for injunctive and declaratory relief pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure concerning the legal issues described herein.

**IT IS FURTHER ORDERED** that the class is defined as follows:

> (1) the TCI Class, on whose behalf representative plaintiffs bring constitutional claims in this action is defined as: "all prisoners who are now or in the future will be confined at TCI;" and

> (2) the ADA Subclass, on whose behalf representative plaintiffs bring statutory claims in this action, is defined as: "all individuals with disabilities who are now or in the future will be confined at TCI."

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #20) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion to stay discovery (Docket #22) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for leave to file brief exceeding page limit (Docket #38) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to continue (Docket #39) is **DENIED AS MOOT**.

29

**IT IS FURTHER ORDERED** that the plaintiffs' motion for leave to file (Docket #50) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for leave to file (Docket #51) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 14th day of March, 2007.

**SO ORDERED,**

s/ Rudolph T. Randa
**HON. RUDOLPH T. RANDA**
**Chief Judge**

30