# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KRISTIN FLYNN, *et al.*, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

    -vs-                                   Case No.   06-C-537

JIM DOYLE, *et al.*,

        Defendants.

## DECISION AND ORDER

This action, filed May 1, 2006, alleges *inter alia* that the medical and mental health care provided to prisoners at the Taycheedah Correctional Institution (TCI) in Fond du Lac, Wisconsin, violates the Eighth Amendment to the United States Constitution and Title II of the Americans with Disabilities Act. On March 14, 2007, this Court certified this case as a class action for injunctive and declaratory relief pursuant to Fed. R. Civ. P. 23(b)(2). The Court defined the class as follows:

> (1) the TCI Class, on whose behalf representative plaintiffs bring constitutional claims in this action is defined as: "all prisoners who are now or in the future will be confined at TCI;" and
>
> (2) the ADA Subclass, on whose behalf representative plaintiffs bring statutory claims in this action, is defined as: "all individuals with disabilities who are now or in the future will be confined at TCI."

(Decision and Order, March 14, 2007, at 29.) The plaintiffs filed a motion for a preliminary injunction, which will be addressed herein.

The plaintiffs seek preliminary injunctive relief "to protect them from the serious, ongoing risks to their health posed by a chaotic medication ordering and administration system." (Pls.' Br. in Support of Mot. for Prel. Inj. [Pls.' Br.] at 60.) The plaintiffs contend that they are likely to succeed on the merits of their claims that TCI's systems of medication ordering and administration violate the Eighth Amendment. Specifically, they assert that the defendants' medication ordering and administration systems create an objectively substantial risk of serious harm to TCI prisoners because, 1) TCI's medication ordering system places prisoners at a substantial risk of serious harm, and 2) medication administration by correctional officers places TCI prisoners at a substantial risk of serious harm. The plaintiffs further assert that the defendants are subjectively aware that the medication ordering system poses substantial risks and that using correctional officers to distribute medications poses substantial risks but have repeatedly failed to take reasonable steps to abate such risks. For the reasons that follow, the Court agrees and finds that injunctive relief is necessary to bring these ongoing constitutional violations to a halt.

**I.      TCI's Medication Ordering System**

According to the plaintiffs, TCI's "convoluted and archaic" medication ordering process frequently causes "unconscionable" and "shocking" delays in the delivery of medications to prisoners. (Pls.' Br. at 4.) Due to its reliance on multiple manual

2

transcriptions of information, the process is "fraught with errors," which results in patients routinely receiving wrong medications, medications that should have been discontinued, wrong dosages of medications, and medications that cause adverse interactions with other medications. *Id.*

After the filing of this lawsuit and an investigation of TCI's mental health services by the U.S. Department of Justice, the Wisconsin Department of Corrections (DOC) formed a Pharmacy Transformation Workgroup (PTW) to explore deficiencies in the pharmacy system. The PTW summarized the problem as follows:

> DOC prescribers hand-write medication orders on paper, which are then faxed to the Central Pharmacy. Refills of orders are handled similarly, with tear off bar codes adhered to a page that is later faxed to the CP. Too much time is wasted in the process of prescribers' handwriting the medication order, HSU [Health Services Unit] staff photocopying the order and then faxing it to the Central Pharmacy. Current faxed orders are frequently difficult to read. There are problems with illegibility of prescribers' handwriting, confusion over the inmate/patient's medication record or incompatibility of complex medications that lead to Pharmacist intervention. This type of intervention slows down the medication order process significantly. . . . Medication errors, which carry with them reverberations of liability far into the future, are also a potential.

(Pls.' Br. at 5.) The PTW concluded that replacing the current process of faxing handwritten medication to the DOC's Central Pharmacy Services with a computerized prescriber order entry system (CPOE) "should be DOC's first priority in improving pharmaceutical services." *Id.* A CPOE system would "eliminate the current time consuming processes of fax receipt and sortation, and manual entry of order information into [WDOC's pharmacy management

3

computer] system," help obviate "further delays while pharmacists or other CP staff contact institution HSUs to clarify what faxed orders actually say," and "greatly reduce[]" "[m]edication errors" by, among other things, "flagg[ing] for medication contraindications." (*Id.* at 5-6.)

The defendants are aware that TCI's current medication ordering process causes delays and errors and that implementation of a CPOE system should cause the delays and errors resulting from the current system to "plummet." (*See* Pls.' Br. at 24-27.) The plaintiffs conclude that the substantial risk of serious harm facing the women at TCI under the current system is intolerable and that because the defendants have been unable or unwilling to act expeditiously to abate the risk, this Court must order them to do so.

**II.       TCI's Medication Administration System**

Currently, correctional officers administer medications to prisoners in five out of TCI's seven housing units. Thus, in those five units officers bear sole responsibility for simultaneously maintaining order, determining which medications to give to which prisoners, and managing a cart full of blister-packed pills and paperwork. Correctional officers "routinely administer wrong doses to the wrong prisoners at the wrong times and improperly memorialize the transaction on a document that will ultimately become part of the prisoner's permanent medical record." (Pls.' Br. at 29.) This "is a dangerous practice that must be stopped immediately." *Id.* The danger arises in two primary areas: (1) the actual

4

administration of the medication to the prisoner; and (2) the documentation of the dose on the prisoner's Medication Administration Record.

First, correctional officers cannot safely administer medications. Rather, the plaintiffs assert that the administration of medication to patients is a nursing function that should be reserved for trained nursing staff, namely licensed practical nurses (LPNs). The DOC's 2006 self-assessment provides a statement of the problem:

> Risk management is an ongoing concern of the Department with the current practice of correctional officers distributing controlled medications throughout the correctional system. Officers do not have the clinical training to recognize the various medications by name, their uses, potential and actual side effects, and whether or not the medications are effective and being properly taken (such medications include psychotropics, narcotics, and other classifications of drugs).

(*Id.*)

Second, medication documentation is a medical task "simply too important to delegate to untrained or undertrained security staff." (Pls.' Br. at 48.) Correctional officers do not properly document medication administration. Medication documentation is a nursing function.

> Without a written record of the disposition of every dose of medication, pharmacotherapy unravels. Medication Administration Records are a critical component of a patient's medical chart and the importance of their proper completion flows from the medical axiom that without documentation, there is no way to demonstrate that care was given. Correct documentation of doses is vital to determining patient compliance with medication regimens, assessing clinical

5

effectiveness, assessing the need to modify treatment plans, and
preventing accidental overdoses and similar errors.

(*Id.* at 53.)

The plaintiffs contend that LPNs should be substituted for correctional officers to administer medication to TCI prisoners. Their substitution is a readily identifiable and necessary remedy to the serious risks associated with officer-administered medications. Moreover, the defendants have been aware of the remedy for nearly eight years. According to the plaintiffs, this longstanding knowledge of the dangers combined with a long history of obstinacy demonstrates a collective, system-wide indifference to the serious medical needs of TCI prisoners.

> In 2006, WDOC proclaimed that "[t]he Department is committed to developing a long-term, viable alternative to the practice of correctional officers distributing medications." Regrettably, the Department's actions have yet to match its rhetoric. An internal budget issue paper recalls a decade of bureaucratic indifference by various WDOC officials and the Governor himself. In every biennial budget cycle since 1997, requests were made to replace correctional officers with health care staff for the purpose of medication distribution. Each one of those requests was denied or otherwise unfulfilled. Telling is the justification for refusing to include the staffing request in WDOC's final budget request: "[a]lthough high error rates by officers had been noted by HS, no documentation could be provided, and it was believed that additional training could address error rate issues."

(*Id.* at 58.)

The defendants do not dispute the plaintiffs' factual findings. Rather, they contend that the plaintiffs are not entitled to a preliminary injunction on the medication

6

ordering issue because the DOC plans to implement a CPOE system at TCI and because the time frame proposed by the plaintiffs is unreasonable. The defendants further contend that the plaintiffs are not entitled to a preliminary injunction on the medication distribution issue because the DOC has initiated a plan to hire appropriately trained health care staff, certified nursing assistants (CNAs), to distribute medications at TCI and because the time frame proposed by the plaintiffs is unreasonable.

In reply, the plaintiffs request that, at a minimum, this Court should order the defendants to implement a CPOE system according to the time frame set forth in their pleadings and to put in place interim measures to reduce dangerous errors during the transition. The plaintiffs contend that the defendants' proposed plan to administer medication will not remedy the dangers posed by the current medication distribution system. Specifically, they argue that the use of CNAs to administer medication is unacceptable because they lack essential training in general pharmacology, psychopharmacology and physiology, and even with the additional, approximately twelve and a half eight-hour days of training proposed by the defendants, would still lack essential knowledge and skill necessary to distribute medication at TCI. In addition, defendant Burnett believes that LPNs, or personnel with the same level of training, should deliver medications at TCI, given the acuity level of the patients. LPNs have a year of training while the CNAs envisioned by the defendants would have approximately 175 hours.

7

### III.        Injunctive relief

A party seeking a preliminary injunction must demonstrate that she is reasonably likely to succeed on the merits, that she is experiencing irreparable harm that exceeds any harm her opponent will suffer if the injunction issues, that she lacks an adequate remedy at law, and that the injunction would not harm the public interest. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). "If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis . . . which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." *Id.*; *see Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 619 (7th Cir. 2004).

In order to prevail in an Eighth Amendment challenge to inadequate medical care, a prisoner must show both that the risk of harm to the prisoner is objectively "serious" and that the defendant was subjectively "deliberately indifferent" to the risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiffs have more than a negligible chance of demonstrating at trial that (1) the continued use of correctional officers to distribute medications at TCI poses a substantial risk of serious harm to members of the class and that the defendants know of this risk but failed to take reasonable steps to abate it; and (2) the current system of filling medication orders at TCI poses a substantial risk of serious harm to members of the class and that the defendants know of this risk but have failed to take

8

reasonable steps to abate. *See, e.g., Ginest v. Board of County Com'rs of Carbon County*, 333 F. Supp. 2d 1190, 1207 (D. Wyo. 2004) (inmates face "an objectively intolerable risk of serious injury due to deficiencies in the jail's medical record keeping system"); *Hoptowit v. Ray*, 682 F.2d 1237, 1252-54 (9th Cir. 1984) (Eighth Amendment violation because of inadequate staffing, organization of health care system, access to care, medication distribution system, medical records, and facilities).

In addition, the plaintiffs have no adequate remedy at law in that only injunctive relief will alleviate the risks at which they are placed by the defendants' acts and omissions. Furthermore, if the motion for preliminary injunction is denied, the plaintiffs will suffer irreparable harm in the form of continued medication errors and delays, which will result in life-threatening risks, the exacerbation of chronic and acute serious medical conditions, and unnecessary pain and suffering. Given the plaintiffs' likelihood of success on the merits, the irreparable harm caused by denying the plaintiffs' motion for preliminary injunction outweighs any irreparable harm experienced by the defendants as a result of complying with the terms of this Order. The public has a strong interest in the provision of constitutionally-adequate health care to prisoners and this public interest argues in favor of granting the motion for preliminary injunction.

Finally, the Court recognizes its duty to defer to prison officials in matters of prison safety and administration. For example, defendants note that their implementation of CPOE is being delayed because of the installation of a digital video camera enhancement

9

meant to enhance security at a different facility. Defendants also cite budgetary concerns in response to plaintiffs' request for injunctive relief. However, matters of administrative convenience must ultimately give way when constitutional rights are in jeopardy. "[V]indication of conceded constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them." *Watson v. City of Memphis*, 373 U.S. 526, 537 (1963); *see also Ancara v. Prison Health Servs.,* Inc., 769 F.2d 700, 705 (11th Cir. 1985) ("Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates"). In recognition of the state's substantial interest in the efficient and safe operation of their prison system, the Court will ensure that the injunction in this case is "narrowly drawn, extend[s] no further than necessary to correct the harm . . . , and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2) (Appropriate remedies with respect to prison conditions under the Prison Litigation Reform Act).

## **ORDER**

**IT IS THEREFORE ORDERED** that the plaintiffs' motion for preliminary injunction (Docket #123) is **GRANTED** as to their petition that all controlled medications at Taycheedah Correctional Institution (TCI) be distributed by trained medical personnel with credentials equal to or greater than those of Licensed Practical Nurses (LPNs) as defined by Wis. Stat. § 441.10. The defendants shall ensure that LPNs distributing medications are

10

trained in institution-specific and department-specific medication administration and documentation practices and protocols.

    a. The defendants or their authorized agents are directed to submit to the Court and to the plaintiffs a preliminary plan for implementing this provision within seven (7) days of the entry of this Order.

    b. The defendants or their authorized agents are directed to submit to the Court and to the plaintiffs a final plan for implementing this provision within thirty-seven (37) days of the entry of this Order.

    c. The defendants shall commence full compliance with the terms of this provision no later than sixty (60) days from the entry of this Order. The defendants shall submit to the Court and to the plaintiffs attesting to their compliance and appending the names and proof of licensing for all employees administering controlled medications at TCI.

    d. Upon reasonable notice to the defendants, the plaintiffs shall have the right to enter TCI and observe medication administration and documentation.

11

**IT IS FURTHER ORDERED** that the plaintiffs' motion for preliminary injunction (Docket #123) is **GRANTED** as to their petition that the defendants timely, accurately, and reliably process medication orders and dispense and administer prescribed medications.

    a.    The defendants shall implement the computerized prescriber order entry (CPOE) system according to (and no later than) the timetable set forth in their pleadings.

    b.    The defendants shall propose an implement a plan within sixty (60) days to take such interim steps as necessary to ensure timely and accurate medication order processing until CPOE is implemented and shown to be effective.

**IT IS FURTHER ORDERED** that the parties submit brief position statements on the necessity of an injunction bond pursuant to Fed. R. Civ. P. 65(c) within seven (7) days of the date of this Order.

Dated at Milwaukee, Wisconsin, this 24th day of April, 2009.

        **SO ORDERED,**

        *s/ Rudolph T. Randa*

        **HON. RUDOLPH T. RANDA**
        **Chief Judge**